13 CV 5215

JUDGE CROTTY

**PELTON & ASSOCIATES, PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
(212) 385-9700

RECEIVED
JUL 25 2013
U.S.D.C. S.D. N.Y.
CASHIERS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**LEONARDO PINEDA-DE DIOS, BERNABE PINEDA, EDUARDO PINEDA, LUIS PINEDA, RAFAEL SEPTIMO, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**-against-**

**ALLTYPE MAINTENANCE CORP., LEMLE & WOLFF CONSTRUCTION CORP., LEMLE & WOLFF DEVELOPMENT COMPANY LLC, LEMLE & WOLFF, INC., LEMLE WOLFF BRONX DEVELOPMENT ASSOCIATES LLC, SOUTH BRONX COMMUNITY LEMLE WOLFF LLC, JOLB CONTRACTING CORP., JOHNNY LAMAR and EDMUND MILLER, Jointly and Severally,**

**Defendants.**

**CLASS & COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

## NATURE OF THE ACTION

1. Plaintiffs are general laborers for Defendants' construction enterprise providing services including, but not limited to, development and construction of affordable housing throughout the New York City area. Plaintiffs bring this action to recover unpaid wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and supporting regulations. Plaintiffs bring their FLSA claims on behalf of themselves and all

other similarly situated employees of Defendants, and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of general laborers and all other employees of Defendants with similar compensation structures.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

5. Plaintiff Leonardo Pineda-De Dios ("L. Pineda-De Dios") was, at all relevant times, an adult individual residing in New York County, New York. L. Pineda-De Dios consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

6. Plaintiff Bernabe Pineda ("B. Pineda") was, at all relevant times, an adult individual residing in New York County, New York. B. Pineda consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

7. Plaintiff Eduardo Pineda ("E. Pineda") was, at all relevant times, an adult individual residing in New York County, New York. E. Pineda consents in writing to be a

party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

8. Plaintiff Luis Pineda ("L. Pineda") was, at all relevant times, an adult individual residing in New York County, New York. L. Pineda consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

9. Plaintiff Rafael Septimo ("Septimo") was, at all relevant times, an adult individual residing in New York County, New York. R. Septimo consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

**Defendants:**

10. Upon information and belief, Defendant Alltype Maintenance Corp. ("Alltype") is a New York corporation headquartered at 5925 Broadway, Bronx, New York 10463.

11. Upon information and belief, Defendant Lemle & Wolff Construction Corp. ("Lemle & Wolff Construction") is a New York corporation headquartered at 5925 Broadway, Bronx, New York 10463.

12. Upon information and belief, Defendant Lemle & Wolff Development Company LLC ("Lemle & Wolff Development") is a New York corporation headquartered at 5925 Broadway, Bronx, New York 10463.

13. Upon information and belief, Defendant Lemle & Wolff, Inc. ("Lemle & Wolff Inc.") is a New York corporation headquartered at 5925 Broadway, Bronx, New York 10463.

14. Upon information and belief, Defendant Lemle Wolff Bronx Development Associates LLC ("Lemle Wolff Bronx Development") is a New York corporation

headquartered at 5925 Broadway, Bronx, New York 10463.

15. Upon information and belief, Defendant South Bronx Community Lemle Wolf LLC ("South Bronx Community Lemle Wolff") is a New York corporation headquartered at 5925 Broadway, Bronx, New York 10463. Alltype, Lemle & Wolff Construction, Lemle & Wolff Development, Lemle & Wolf Inc., Lemle Wolff Bronx Development and South Bronx Community Lemle Wolff are hereinafter referred to collectively as the "Lemle & Wolff Enterprise."

16. Upon information and belief, Defendant JOLB Contracting Corp. ("JOLB") is a New York corporation headquartered at 700 West 178th Street, Suite 22, New York, New York 10033. Lemle & Wolff Enterprise and JOLB are hereinafter referred to collectively as the "Corporate Defendants."

17. Upon information and belief, Defendant Johnny Lamar ("Lamar") is an owner, officer, director and/or managing agent of the Corporate Defendants, whose address is unknown at this time and who participated in the day-to-day operations of Corporate Defendants and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants. JOLB and Lamar are hereinafter referred to collectively as "JOLB Contracting."

18. Upon information and belief, Defendant Edmund Miller ("Miller" and collectively with Lamar, the "Individual Defendants") is the owner, officer, director and/or managing agent of the Corporate Defendants, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally

and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants. The Individual Defendants and the Corporate Defendants are hereinafter referred to collectively as the "Defendants."

## COLLECTIVE ACTION ALLEGATIONS

19. Pursuant to 29 U.S.C. §§ 206, 207 and 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of general laborers and all other employees of Defendants with similar compensation structures (the "Collective Action Members") who are or were employed by Defendants since July 25, 2010 through the entry of judgment in this case (the "Collective Action Period").

20. A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated in that they were all subjected to Defendants' illegal policy of failing to pay minimum wages for all hours worked and overtime premiums. As a result of that policy, Plaintiffs and the Collective Action Members were not paid wages for all hours worked and did not receive legally required overtime premium payments for all hours worked in excess of forty (40) hours in a given workweek.

## CLASS ACTION ALLEGATIONS

21. Pursuant to the NYLL, Plaintiffs bring their Third and Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all general laborers and all other employees of Defendants with similar compensation structures who are or were employed by the Defendants within New York (the "Class Members") at any time since July 25, 2007 through the entry of final judgment in this

case (the "Class Period").

22. The persons in the Class identified above are so numerous that joinder of all members is impracticable.

23. Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

24. Upon information and belief, there are well in excess of forty (40) members of the Class during the Class Period.

25. There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class, including whether Defendants had a corporate policy of failing to pay wages for all hours worked and overtime premiums when employees worked in excess of forty (40) hours in a given week.

26. The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the members of the Class and Plaintiffs' counsel are experienced in handling class litigation.

27. The Third and Fourth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

28. The Third and Fourth Causes of Action are also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. whether each Defendant was an employer of the Class Members within the meaning of the NYLL;

b. whether Defendants had a policy of failing to pay the Class Members at not less than minimum wage for all hours worked;

c. whether Defendants had a policy of failing to pay the Class Members overtime premium pay for all hours worked in excess of forty (40) per week; and

d. whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, interest, cost and disbursements and attorneys' fees.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## <u>STATEMENT OF FACTS</u>

30. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

31. Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

32. At all relevant times, Defendants employed and/or continue to employ Plaintiffs

and each member of the Collective Action within the meaning of the FLSA, 29 U.S.C. § 203(d).

33. At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each member of the Class within the meaning of the NYLL, §§ 2 and 651.

34. At all relevant times, Defendants have been Plaintiffs' employers and/or joint employers within the meaning of the FLSA and NYLL.

35. Defendants' operations are interrelated and unified.

36. Upon information and belief, the Lemle & Wolff Enterprise operates all of its entities out of Defendants' corporate headquarters, located at 5925 Broadway, Bronx, New York 10463 ("Defendants' Central Office"). Upon information and belief, Defendants centrally operate and manage the Lemle & Wolff Enterprise, including labor relations and payroll, from Defendants' Central Office.

37. The Lemle & Wolf Enterprise maintains one website for its various services, and lists one phone number and the Defendants' Central Office as its contact information.

38. According to the Lemle & Wolf Enterprise's website, http://lemlewolff.com, "Lemle & Wolff, Inc. is a New York City property management, development and construction firm specializing in the provision of affordable housing. The company currently manages over 6,000 apartments and has an extensive resume of successful development and construction projects. The firm operates throughout NYC with the largest concentration of its portfolio located in Manhattan and the Bronx…The Lemle & Wolff family of companies includes a general contracting affiliate, Apartment Rehabilitation Corporation, Inc. (ARC) and a full-service maintenance company, Alltype Maintenance Corporation, Inc. (AMC)."

39. Upon information and belief, Defendant Miller handled the Lemle & Wolff

Enterprise's payroll and recordkeeping from Defendants' Central Office and is actively involved with the Defendants' day to day operations.

40. Upon information and belief, Defendants share employees within the Lemle & Wolff Enterprise and require Plaintiffs and Defendants' other laborers to work for all of the Corporate Defendants.

41. Upon information and belief, the Lemle & Wolff Enterprise contracted with Gary Peters ("Peters") to provide labor exclusively for buildings owned by the Lemle & Wolff Enterprise. The Lemle & Wolff Enterprise had the power to hire and fire Peters, and in fact did hire Peters, set his pay, and supervised him on a daily basis at all of the Lemle & Wolff Enterprise construction projects.

42. Upon information and belief, Peters hired Plaintiffs L. Pineda-De Dios and L. Pineda, along with other laborers, set their pay, and supervised Plaintiffs L. Pineda-De Dios, L. Pineda and other laborers on a daily basis at Lemle & Wolff Enterprise construction projects. Upon information and belief, Peters was paid by the Lemle & Wolff Enterprise and received compensation not only for his own work as a contractor but also in order to pay wages to Plaintiffs L. Pineda-De Dios, L. Pineda and Peters' other laborers.

43. Upon information and belief, Defendant Johnny Lamar is an owner of Defendant JOLB. According to the New York Division of Corporations, Defendant Lamar is the chief executive officer of JOLB. Lamar hired Plaintiffs, set their pay, and supervised Plaintiffs on a daily basis at Lemle & Wolff Enterprise construction projects.

44. Upon information and belief, the Lemle & Wolff Enterprise contracted with JOLB Contracting to provide labor exclusively for buildings owned by the Lemle & Wolff Enterprise. The Lemle & Wolff Enterprise had the power to hire and fire JOLB Contracting,

and in fact did hire Lamar, set his pay and supervised him on a daily basis at all of the Lemle & Wolff Enterprise construction projects. Upon information and belief, Lamar was paid by the Lemle & Wolff Enterprise which was compensation for not only Lamar's work as a contractor but was also compensation from which to pay wages to Plaintiffs and Lamar's other laborers.

45. Upon information and belief, Defendant Miller is an owner of the Lemle & Wolff Enterprise. According to the New York Division of Corporations, Defendant Miller is the chief executive officer of Lemle & Wolff Construction. Miller has the power to hire and fire laborers working for Lemle & Wolff Enterprise contractors and in fact did hire and fire Plaintiffs.

46. Upon information and belief, Lemle & World Enterprise's employee, Keith Doe ("K. Doe") is a general manager at the Lemle & Wolff Enterprise. Plaintiffs have witnessed K. Doe regularly at the Lemle & Wolff job sites supervising Plaintiffs and Lemle & Wolff site supervisors.

47. Upon information and belief, Lemle & Wolff Enterprise's employee, Joe "Doe" ("J. Doe"), is a site supervisor at Lemle & Wolff Enterprise's job sites. Plaintiffs have seen J. Doe each day overseeing the projects at all of the job sites, as well as supervising Plaintiffs and Defendant Lamar on a daily basis, and instructing them on how quickly to work and making sure their labor met his expectations.

48. Upon information and belief, Lemle & Wolff Enterprise's employee, Jose Rodrigues ("Rodrigues"), is a site supervisor at Lemle & Wolf Enterprise's job sites. Plaintiffs have seen Rodrigues each day overseeing the projects at all of the job sites, as well as supervising Plaintiffs and Defendant Lamar on a daily basis, instructing them on how quickly to work, and making sure their labor met his expectations.

49. Upon information and belief, Defendants employ at least sixty (60) employees at any one time. Plaintiffs and a large number of Defendants' other employees have not received: (i) wages for all hours worked and (ii) overtime pay for hours worked over forty in a week, as required by the FLSA and the NYLL.

50. Throughout their employment with Defendants, Plaintiffs performed work as laborers for only the Lemle & Wolff Enterprise on only buildings owned by the Lemle & Wolff Enterprise. Upon information and belief, JOLB and Peters had exclusive contracts with the Lemle & Wolff Enterprise to provide labor for all Lemle & Wolff buildings. Throughout their employment with Defendants, Plaintiffs' job responsibilities included, among other things: demolition, sheet rock installation, construction, and painting. Plaintiffs were supervised on a daily basis by K. Doe, J. Doe, and Rodrigues, and reported to Lamar, their direct supervisor. Plaintiffs L. Pineda-De Dios and L. Pineda also reported to Peters, who was also their direct supervisor.

51. By nature of Miller and the Lemle & Wolff Enterprise's supervision and control over Plaintiffs and the other laborers who performed work exclusively upon Lemle & Wolff Enterprise construction and maintenance projects, Miller and the Lemle & Wolff Enterprise have been Plaintiffs and such other laborers' employers and/or joint employers throughout all relevant time periods herein.

52. Upon being hired, Plaintiffs were informed by Lamar that they would receive $100.00 per day for their work from 8:00 am until 5:00 pm. Notwithstanding Lamar's representation that their pay compensated Plaintiffs for working from 8:00 am until 5:00 pm, Plaintiffs still only received $100.00 per day, by cash or personal check, when they worked additional hours each day. If Plaintiffs missed a half day of work however, their pay was

deducted by $50. Plaintiffs' $100 per day rate was understood to be compensation for working from 8:00 am until 5:00 pm, such that the additional work Plaintiffs performed beyond those hours were actually "off-the-clock." Thus, Plaintiffs were not paid any wages for those hours before 8:00 am and after 5:00 pm. Plaintiffs were initially paid their wages twice per week, then once per month, until ultimately they were not paid at all for their work but were instructed to keep working with promises of future payment of outstanding wages.

53. Throughout their employment with Defendants, Plaintiffs worked only on buildings owned by the Lemle & Wolf Enterprise and worked alongside other Lemle & Wolff contractors and laborers.

54. Plaintiff L. Pineda-De Dios was employed by Defendants as a laborer from in or around June 2002 until in or around June 30, 2007 and again from in or around February 2011 until in or around February 2013 (the "L. Pineda-De Dios Employment Period").

55. From in or around June 2002 until in or around June 30, 2007, L. Pineda-De Dios worked for Peters exclusively on Lemle & Wolff projects.

56. From in or around June 2002 until in or around June 30, 2007, L. Pineda-De Dios typically worked five (5) to six (6) days per week from approximately 8:00 am until between approximately 4:00 pm to 5:00 pm, for a total of between approximately forty (40) to fifty-four (54) hours per week.

57. From in or around June 2002 until in or around June 2003, L. Pineda-De Dios was paid $100 per day for his work regardless of how many hours he worked each week. From in or around June 2003 until in or around June 30, 2007, L. Pineda-De Dios was paid $150 per day regardless of how many hours he worked each week. Despite the fact that he often worked more than forty (40) hours per week, L-Pineda-De Dios was not paid at overtime rates for

hours worked beyond forty (40) each week.

58. When he returned to work for Defendants in or around February 2011 until in or around February 2013, L. Pineda-De Dios was hired by Defendant Lamar to work exclusively on Lemle & Wolff projects. During this time period, L. Pineda-De Dios typically worked five (5) to six (6) days per week from approximately 7:30 am until approximately 6:00 pm with a twenty (20) minute lunch break, for a total of between approximately fifty (50) to sixty (60) hours per week. Despite the fact that he typically worked more than forty (40) hours in a given week, throughout the L. Pineda-De Dios Employment Period, L. Pineda-De Dios was not paid any compensation for his overtime hours, let alone wages at his overtime rates for hours worked beyond forty (40) each week..

59. Defendants failed to pay L. Pineda De Dios any wages whatsoever beginning on or around August 24, 2012 and failed to compensate L. Pineda-De Dios for his work for the Defendants through February 2013.

60. Throughout the L. Pineda-De Dios Employment Period, L-Pineda-De Dios complained to Defendant Miller and K. Doe about not receiving wages from either Peters or Lamar for all the hours he worked. In response, Miller and K. Doe stated that they did not know what to do about this and claimed that Peters and Lamar were receiving payment for the labor Plaintiffs were providing.

61. Plaintiff B. Pineda was employed by Defendants as a laborer from on or around March 20, 2009 until on or around November 23, 2012 (the "B. Pineda Employment Period").

62. Throughout the B. Pineda Employment Period, B. Pineda typically worked five (5) to seven (7) days per week from between approximately 7:30 am to 8:00 am until between approximately 4:30 pm to 5:00 pm with a twenty (20) minute lunch break, for a total of

between approximately forty (40) to sixty-three (63) hours per week. Despite the fact that B. Pineda frequently worked more than forty (40) hours in a given week, B. Pineda was not paid any compensation for his overtime hours worked, let alone wages at his overtime rates for all hours worked beyond forty (40) each week throughout the B. Pineda Employment Period.

63. Beginning on or around February 25, 2012 and throughout the remainder of the B. Pineda Employment Period, B. Pineda did not receive any wages for the hours he worked for Defendants.

64. Plaintiff E. Pineda was employed by Defendants as a laborer from in or around February 2008 until on or around November 16, 2012 (the "E. Pineda Employment Period").

65. Throughout the E. Pineda Employment Period, E. Pineda typically worked five (5) to seven (7) days per week from between approximately 7:30 am to 8:00 am until approximately 5:00 pm with a twenty (20) minute lunch break, for a total of between approximately forty-three (43) to sixty-three (63) hours per week. Despite the fact that E. Pineda frequently worked more than forty (40) hours in a given week, E. Pineda was not paid any compensation for his overtime hours worked, let alone wages at his overtime rates for all hours worked beyond forty (40) each week throughout the E. Pineda Employment Period.

66. Beginning on or around June 18, 2012 and throughout the remainder of the E. Pineda Employment Period, E. Pineda did not receive any wages for the hours he worked for Defendants.

67. Plaintiff L. Pineda was employed by Defendants as a laborer from on or around November 20, 2004 until in or around June 30, 2007 and again from on or around August 23, 2007 until on or around July 30, 2012 (the "L. Pineda Employment Period").

68. From in or around November 20, 2004 until in or around June 30, 2007, L.

Pineda worked for Peters exclusively on Lemle & Wolff projects. During this time, L. Pineda typically worked five (5) to six (6) days per week from approximately 8:00 am until between approximately 4:00 pm to 5:00 pm, for a total of between approximately forty (40) to fifty-four (54) hours per week.

69. From in or around November 20, 2004 until in or around December 2004, L. Pineda was paid $50 per day for his work regardless of how many hours he worked each week. Beginning in or around December 2004 until in or around June 2005, L. Pineda was paid $60 per day regardless of how many hours he worked each week. Beginning in or around June 2005 until in or around April 2006, L. Pineda was paid $80 per day regardless of how many hours he worked each week. Beginning in or around April 2006 until in or around June 30, 2007, L. Pineda was paid $100 per day regardless of how many hours he worked each week. Despite the fact that he often worked more than forty (40) hours per week, L-Pineda was not paid any compensation for his overtime hours worked, let alone at overtime rates for hours worked beyond forty (40) each week.

70. When he returned to work for Defendants on or around August 23, 2007 until on or around July 30, 2012, L. Pineda was hired by Defendant Lamar to work exclusively on Lemle & Wolff projects. During this time period, L. Pineda typically worked five (5) to seven (7) days per week from between approximately 7:30 am to 8:00 am until approximately 5:30 pm with a twenty (20) minute lunch break, for a total of between approximately forty-five (45) to sixty-six and one-half (66 ½) hours per week. Despite the fact that L. Pineda frequently worked more than forty (40) hours in a given week, L. Pineda was not paid any compensation for his overtime hours worked, let alone at overtime rates for all hours worked beyond forty (40) each week throughout the Pineda Employment Period.

71. Throughout the L. Pineda Employment Period, L. Pineda was routinely not paid for all the hours he worked. Beginning on or around June 18, 2012 and throughout the remainder of the L. Pineda Employment Period, L. Pineda did not receive any wages for the hours he worked for Defendants.

72. Plaintiff Septimo was employed by Defendants as a laborer from in or around February 2009 until on or around November 16, 2012 (the "Septimo Employment Period").

73. Throughout the Septimo Employment Period, Septimo typically worked five (5) to seven (7) days per week from between approximately 7:30 am to 8:00 am until approximately 4:30 pm with a twenty (20) minute lunch break, for a total of between approximately forty (40) to sixty (60) hours per week. Despite the fact that Septimo frequently worked more than forty (40) hours in a given week, Septimo was not paid any compensation for his overtime hours worked, let alone at overtime rates for all hours worked beyond forty (40) each week throughout the Septimo Employment Period.

74. While Septimo was routinely not paid for all of the hours that he worked, including numerous hours between January 2012 until in or around August 2012, Septimo was not paid any compensation for his work for the Defendants beginning in or around October 2012 throughout the remainder of the Septimo Employment Period.

75. Throughout their employment with Defendants, Plaintiffs regularly complained to Defendant Lamar about not receiving overtime pay for the hours they worked over forty hours each week. In response, Lamar would usually say, "That's what I pay you. You are free to take it." Lamar had full knowledge that Plaintiffs and Defendants other employees were not being paid any wages because Plaintiffs told Lamar that they were not being paid but he continued to have them work on Lemle & Wolff Enterprise construction and maintenance

projects.

76. Throughout their employment with Defendants, Plaintiffs also regularly complained to Rodrigues and K. Doe about not receiving any wages for the hours they worked from either Peters or Lamar. In response, Rodrigues and K. Doe would inform Plaintiffs that they did not know what to do but that Lamar and Peters were collecting their payments for the work Plaintiffs were completing.

77. On or around April 1, 2013, Plaintiff L. Pineda complained to Defendant Miller about Plaintiffs not receiving any pay for the hours they worked and requested that he be hired as a contractor and supervisor of the Plaintiffs. Miller agreed and required that L. Pineda obtain a license and a van for transportation of tools to Lemle & Wolff project sites. Miller also stated that he would pay L. Pineda wages which were not only for L. Pineda's work as a contractor but also to pay for Plaintiffs' work as laborers. L. Pineda obtained the license, purchased the van, and continued to provide labor services for Defendants alongside Plaintiffs for approximately three (3) weeks until on or around April 20, 2013.

78. From in or around April 1, 2013 until in or around April 20, 2013, Plaintiffs continued to provide labor exclusively on Lemle & Wolff owned buildings and met each morning in the basement of Defendants' Central Office to receive their equipment from "William," a Lemle & Wolff employee, along with a work order sheet. This work order sheet included instructions as to what repairs needed to be made, the address of the Lemle & Wolff building requiring the repairs, and a comments page for the tenant receiving the repairs to sign and write a review of the services rendered by Plaintiffs. Also included on the work order sheets were Defendants Lemle & Wolff Inc. and Alltype's corporate names and Defendants' Central Office's address, along with a dollar amount which Defendants agreed to pay L. Pineda

to be distributed among L. Pineda and the other Plaintiffs L. Pineda supervised.

79. On or around April 20, 2013, Miller fired Plaintiffs and paid L. Pineda approximately $3,000 by personal check as compensation for all of Plaintiffs' work from approximately April 1, 2013 until approximately April 20, 2013. This amount did not reflect the total amounts designated on all the work orders that Plaintiffs had completed from approximately April 1, 2013 until approximately April 20, 2013, such that Miller knew that Plaintiffs could not possibly be paid for all the hours they worked.

80. Plaintiffs' work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

81. The work performed by Plaintiffs required little skill and no capital investment.

82. The work performed by Plaintiffs did not require the exercise of independent business judgment.

83. Defendants have simultaneously employed other individuals like Plaintiffs during the relevant time periods and continuing until today, to perform work as general laborers at Defendants' buildings. As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery, and is believed to be in excess of 40.

84. Like Plaintiffs, Defendants' other employees were required to work for Defendants in excess of forty (40) hours per week, yet Defendants failed to pay Plaintiffs and their other employees for all hours worked and overtime compensation for hours worked in excess of forty (40) hours per week. This refusal to pay Plaintiffs and Defendants' other employees wages for all hours worked and overtime compensation for hours worked in excess of forty (40) in a given week are corporate policies of Defendants that apply to all of

Defendants' general laborers and all other employees of Defendants with similar compensation structures.

85. Upon information and belief, throughout the Collective Action Period, Class Period, and during the course of Plaintiffs' own employment, Defendants failed to maintain accurate and sufficient time records.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**

86. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87. As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206(a)(1) and 215(a)(2).

88. As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

89. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

90. Defendants' failure to pay wages to Plaintiffs and the Collective Action Members at the agreed-upon rates, at no less than minimum wage caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the

Collective Action Members are entitled to recover from Defendants their unpaid wages at no less than minimum wage, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

91. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92. As a result of Defendants' failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a), for which Plaintiffs and the Collective Action Members are entitled to relief pursuant to 29 U.S.C. § 216(b).

93. As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

94. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

95. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action

Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**

96. Plaintiffs, on behalf of themselves, the opt-in Plaintiffs and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

97. Defendants entirely failed to pay Plaintiffs, the opt-in Plaintiffs and the Class Members for certain hours they worked.

98. Defendants' failure to pay Plaintiffs, the opt-in Plaintiffs, and the Class Members at the agreed-upon rates, at no less than minimum wage, constitutes a violation of the NYLL and its supporting regulations.

99. Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages at no less than New York State minimum wage plus interest, liquidated damages, reasonable attorneys' fees, and the costs and disbursements of this action pursuant to NYLL § 663(1) *et al.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

100. Plaintiffs, on behalf of themselves, the opt-in Plaintiffs and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

101. Defendants violated Plaintiffs' rights and the rights of the Class Members by

failing to pay them overtime compensation at rates not less than one and one-half times their regular rate of pay for each hour worked in excess of forty hours (40) per week, in violation of the NYLL and its supporting regulations.

102. The Defendants' NYLL violations have caused Plaintiffs and the Class Members irreparable harm for which there is no adequate remedy at law.

103. As a result of Defendants' failure to compensate its employees, including Plaintiffs and the Class Members, at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, Defendants have violated the NYLL, §§ 650 *et seq.*, for which Plaintiffs and the Class Members are entitled to relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, and the Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative members of the Collective Action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members, appointing Plaintiffs and their counsel to represent the Class, and ordering appropriate monetary, equitable and

injunctive relief to remedy Defendants' violations of New York state law;

c. An order tolling the relevant statutes of limitations;

d. An order declaring that Defendants violated the FLSA;

e. An order declaring that Defendants' violations of the FLSA were willful;

f. An order declaring that Defendants violated the NYLL;

g. An award of damages arising out of non-payment of minimum wages due under the FLSA and NYLL;

h. An award of damages arising out of the non-payment of wages due under the FLSA and NYLL;

i. An award of overtime compensation due under the FLSA and NYLL;

j. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL;

k. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

l. An award of prejudgment and post-judgment interest;

m. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
July 25, 2013

PELTON & ASSOCIATES PC

By: [signature]

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective and class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a Lemle & Wolf y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar salario mínimo y horas extras como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

[signature] 06-21-13 Rafael

Firma Fecha Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a Lemle & Wolf y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar salario mínimo y horas extras como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

| | | |
|---|---|---|
| [signature] | 06/21/13 | Barnabe |
| Firma | Fecha | Nombre Escrito |

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a Lemle & Wolf y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar salario mínimo y horas extras como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

[signature] 06-21-13 EDUARDO PINEDA

Firma | Fecha | Nombre Escrito

June 18, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Lemle & Wolf and/or its owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages as required under state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

[signature] 6/18/13

Signature Date Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a Lemle & Wolf y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar salario mínimo y horas extras como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

| [signature] | 6/18/13 | |
|---|---|---|
| Firma | Fecha | Nombre Escrito |

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a Lemle & Wolf y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar salario mínimo y horas extras como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

| [signature] | 06/21 | Luis Pineda |
|---|---|---|
| Firma | Fecha | Nombre Escrito |